Judge Carr
delivered his opinion.
Concurring, as I do entirely, with my brother Coarter, in the general view which he has taken of this case, on the merits, I have thought it not amiss to state a'separate ground, which, in my mind, justifies the Court below in refusing the instructions asked for by the counsel for the plaintiff.
It is this: that instead of presenting to the Court, the points of law distinctly and separately, as arising out of the facts, and asking on these points the instruction of the Court to the jury, the counsel has presented the whole mass of evidence, and blending fact with law, has asked the Court to instruct the jury generally, that if they believed the facts to be proved, the plaintiff was entitled to her freedom.
In Smith v. Carrington, 4 Cranch, 62, one question before the Court was, whether the Court below erred in refusing to give instructions to the jury, which were asked. The Chief Justice, delivering the opinion of the Court, says, “The difficulty of deciding did not arise from any doubt produced by the facts in the cause, but from the manner in which the question was propounded. After a long and complex statement of the testimony, the counsel for the plaintiffs requested the Court to declare, ‘ whether if the plaintiffs had actually paid the premium to the underwriters, before any notice of the change of the destination of the ship, they had a right, under, the circumstances of the case, to recover the same of the defendant.’ Had the plaintiffs’ counsel been content with the answer of the Court to the question of law, he would have been entitled to that answer, but when he involved fact *605 with law, and demanded the opinion of the Court on the force and truth of the testimony, by adding the words, 1 under the circumstances of the case,’ the question is so qualified as to- be essentially changed; and although the Court might, ivith propriety, have separated the law from thefacts,and have stated the legal principle, leaving the fact to the jury, there was no obligation to make ,this discrimination, and consequently no error in refusing to answer the question propounded.”
In Brooke v. Young, 3 Rand. 115, this Court examined this subject, and assigned at some length the reasons why a party, asking the instruction of the Court to the jury, as to the law, should specify the point, and not be permitted to ask instructions generally, as to the law arising out of a complicated mass of evidence; thereby throwing it upon the Court to ascertain all the points of law which might be involved; to separate them from the facts, and decide upon them. To this course there are many strong objections. In the hurry and confusion of a jury trial, points, buried under this mass of evidence, may be overlooked, and this omission may involve a reversal of the judgment; whereas, if the point of law, or the different points arising, had been distinctly put, such a consequence could not follow. The opposite party too, when he heard a specific objection made, might be able to remove it immediately by additional evidence. This course, therefore, is calculated to entrap both the Court and the party. Upon this ground it is, that a party wishing the instruction of the Court on a point of law, is required to give his question a precise shape, and not blend together law and fact.
In the case before us, a mass of evidence filling many pages, is submitted to the Court, and they are asked to instruct the jury, that the plaintiff was entitled to her freedom, if they considered the facts (a long catalogue of which is stated) to he proved. Before the Court could come to the conclusion that the plaintiff was free, observe what they would have to do. This mass of evidence must be care *606 fully weighed and sifted, to ascertain what points of .law were involved in it, and then these points must be decided. A few of these points are, 1. What law shall govern the case, that of Maryland or Virginia? 2. Does the Act of Limitations apply ? If so, then, 3. From what time shall it run ? 4. To what weight is the Maryland judgment entitied ? Several other questions, might be put as fairly arising on the record. Now is it to be tolerated, that in the hurry and confusion of a jury trial, a Court should be forced in the way of instructions to the jury, to hunt up all these points, and decide on them in the lump ? Is this either pro-, per or necessary ? If a party wants the opinion of the Court on the law arising on the whole case, let him procure a special verdict, or demur to the evidence; and then the jury are discharged, and the Court deliberates at leisure on all the points which may arise. I have no doubt, that for this reason alone, the Court was justified in refusing the instructions asked.
Judge Coalter.
Although the bill of exceptions spreads the evidence in this case on the record, yet we have nothing to do with it, further than to see whether the instructions of the Court were correct in the case, provided the jury should believe that the facts alleged to exist, were proved.
In examining this case, I will consider it as governed by the laws of Maryland, and will endeavor, as far as I am enabled to do so, to pronounce the law of that State upon it. When the law of that State is not in proof before me, I will take the common law as my guide, the party having furnished me with no other.
I will also premise that the question, whether, if the Statute of Limitations began to run as between Col. Sim and Mrs. Sim, in the county of Washington and District of Columbia, whilst they both resided therein, it continued to run after his removal from the District to the county of *607 Prince George’s in the State of Maryland, is not presented by the statement of facts contended for on the part of the appellant. By those facts, if established, the period of three years had elapsed, before that removal; and there is no instruction asked, as to what the law would bo in case that was not the fact. That matter, therefore, both as to fact and law, was left to the jury. They may have found, and probably did find, both against the appellants. On this point, the facts contended for as having been proved, were, 1. That Patríele Sim took possession of the appellant in 1802, and held her in possession in the District of Columbia, until his removal into Prince Georges’s county in 1809. 2. That from 1802, until 1820, Ariana Sim resided in Georgetown in the District of Columbia. 3. That in 1805, she was legally divorced from'her.husband Patrick Sim, and from that time, was capable in law of holding property in her own right, under the will of her father Richard. Henderson.
The evidence set out in the record shews, how Richard Henderson became entitled to the appellant; and his will, which is also in the record, so far as it relates to Kittys made in 1801, gives her to his daughter Ariana, when she shall be capable in law to hold such property in her own right, &c.
The Act of Assembly divorcing these parties, is not in the record; and the only witness who speaks of it, says it passed in 1805 or 1806.
As to the removal of Patrick Sim to Prince George’s, two witnesses only speak of it. One says it was in 1808; the other, in 1808 or 1809. The time being thus left doubtful, both as to the passage of the law and his removal, the jury may well be supposed to have found that the three years had hot elapsed; and it may have been proved to them, that by the law of Maryland, the Statute did not bar, unless the three years had elapsed before the removal.
There may also be a question, which I would not wish to be considered as having decided, in this case, one way *608 or the other; and .that is, how far a slave, who has been emancipated by one, who, but for a possession which by the Act of Limitations bars a recovery by the true owner, had no title and no right to emancipate, can recover his freedom under such emancipation, against his true owner? As for instance, Ji. takes possession of a slave, claiming him as his own, but who in reality belongs to B. and holds him for more than 5 years; so that, if he was sued by B. he might plead the Act of Limitations, and bar his recovery; and after this possession, he emancipates him, and B. the real owner, gets possession. Can a title to freedom be maintained against B. the real owner, because Jl. might have pleaded the Act of Limitations in a suit against him?
The remaining facts, on whicli it was contended that the appellant was entitled to her freedom, under the first instruction moved for, are these:
4. That Patrick Sim took her into the county of Prince George’s in 1809, and held her there until his death in 1819. 5. That iu 1815, she recovered her freedom by judgment of the Court of that county, against him. 6. That in May, 1819, or previous thereto, she removed to the City of Washington, and from that time until she was seized in 1825, resided and acted publicly and openly as a free woman, claiming her freedom under the said judgment. And the Court was asked to instruct the jury, that if, from the evidence, they believed these facts, then the plaintiff was entitled to her freedom. This instruction the Court refused to give.
I think the Court was correct in refusing this instruction. The reason why the Court might have been sustained here in refusing to give either of the instructions asked for, and which have been stated by the Judge who has preceded me, applies emphatically to this instruction; for, in addition to those objections to it, the evidence in the record shews, that the statement of facts so submitted, excluded all those belonging to the defence, and which, if believed, would support that defence and justify a contra *609 ry finding; as for instance, whether a hare possession for the time required by the Act, by one not claiming title or property, but on the contrary disclaiming such property, will, by such mere possession and lapse of time, vest a title in the possessor ? Or whether, if such possession is obtained and retained by fraud or false pretence, length of time will give property ?
As to the Maryland judgment, it could have no effect in favor of the appellant, except against Sim and those claiming under him, posterior to the judgment.
The object of that judgment, and of the will of Sim, seems to have been, to admit and establish certain fictitious facts, and thereby prove a right to freedom in the appellant, on the return of Shn and wife from Virginia in 1801 or 1802, and prior to the time when he took possession of her; so as to shew in fact, that at that time she was a free person. The intention of this collusive judgment was, doubtless, to defeat the rights of Mrs. Sim, under the will of her father. The Court, ¿therefore, probably erred in not directing the jury to weigh these facts, in the consideration of the question, whether the possession of Sim was unaccompanied by circumstances of fraud, and whether it w»as accompanied by a real and bona fide claim of property 'In himself, adverse to that of Mrs. Sim. But, as this error, if it is one, is against the apellee, it is unnecessary to consider it further, inasmuch as I am of opinion, that there is no error in the proceedings, of which the appellant can complain.
The second instruction moved for, was this: that if, from the evidence, the jury believed the matters stated in the preceding prayer to be true, and should moreover believe that the said Patrick Sim had seized and held the plaintiff as aforesaid, from the year 1802, until her recovery of freedom by judgment as aforesaid, under a claim of title to her as his slave, then that the plaintiff was entitled to recover in this suit; which opinion the Court refused to give,-unless under this qualification, that the jury should *610 be satisfied 'that the possession of the said Patrick Sim did not originate in fraud or violence, and that the said Sim did really and bona fide claim property in the said slave, when he forcibly possessed himself of her. By this I understand the Court to mean, that if the possession originated in fraud, no title could vest in Sim, by reason of lapse of time; and even if by violence, as the word seize in the instruction asked for, would seem to import, (thereby shewing a possession contrary to the consent of the owner,) that lapse of time would not give property under such possession, unless he did really and bona fide claim property in the said slave, when he so forcibly possessed himself of her.
As the evidence in this case shews no breach of the peace in getting possession, or any thing beyond that force which attends the taking away property which would not go itself, I cannot suppose that the Judge intended to raise the question, how far the Courts would discourage breaches of the peace, in taking property really and bona fide claimed by the taker, by deciding that-in such cases, lapse of time would not give property. On the contrary, he instructs under the supposition of a forcible possession, by saying that such possession will not give title, unless accompanied with a real and bona fide claim of property. Was the instruction so understood, correct?
I understand that the first branch-of it, as to a fraudulent possession, is considered correct; and as the instruction moved for is predicated on the necessity of a possession, accompanied with a claim of property, and which surely ought to be a real and bona fide claim, or it is no claim, I consider the second branch as mainly objected to on a construction of its meaning variant from that I have put on it; and that if it shall have that construction, it is unobjectionable.
On the whole, I think the judgment must be affirmed.
The other Judges concurred in the opinion that the judgment ought to be affirmed on the merits.